# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Gerald R. Schell, M.D.,

                         Plaintiff,        Case No. 1:17-cv-02761

v.                                 Michael L. Brown
                                            United States District Judge

Amendia, Inc.,

                         Defendant.

_____/

## OPINION & ORDER

Plaintiff Gerald R. Schell, M.D., claims Defendant Amendia, Inc., failed to pay royalties under several contracts to develop medical devices. (Dkt. 1.) Schell sued Amendia for breaching three different agreements, to obtain reimbursement for services and expenses, for a declaratory judgment, and for an accounting. (*Id.*) Amendia moved to dismiss various claims. (Dkt. 15.) The Court grants that motion in part and denies it in part.

## I.    Background and Procedural History

Schell is a neurosurgeon and spine surgeon who possesses expertise in spinal implant devices and procedures. (Dkt. 1 ¶¶ 1, 6, 8.) Amendia

manufactures and sells these kinds of devices. (*Id*. ¶ 7.) The two collaborated to design and develop various devices, including a pedicle screw system, a facet screw system, and spinal interbody fusion implants. (*Id*. ¶ 9.) They entered into royalty agreements in 2009, 2010, and 2011 to assure Schell received compensation for his assistance. (Dkts. 1 ¶ 10; 6 at 4–25.)[1]

The 2009 agreement governed their collaboration on the SPARTAN S3 facet Screw System, SPARTAN Facet Rasp, and MIS PEEK Interbody Device ("MIS PEEK") (collectively "SPARTAN"), and any next generation designs. (Dkt. 1 ¶ 11.) Amendia agreed to pay Schell a different royalty for each product, including most relevantly a 3.5% royalty on sales of the MIS PEEK device. (*Id*. ¶ 12.) The agreement gives Schell the right to audit Amendia's finances in order to assure he received accurate royalty payments. (Dkt. 6 at 6.) Amendia retained all intellectual property and patent rights in the product. (*Id*. at 6–7.) But if Amendia materially breached the agreement by failing to pay royalty fees or to perform other

[1] Schell amended his complaint to remove the agreements originally attached as exhibits to his complaint and substitute in new exhibits. (Dkt. 6.) The Court refers to both the complaint and the revised exhibits.

material obligations, Schell had the right to use the patent rights, engineering material, and FDA information. (Dkt. 1 ¶ 15.) Amendia also agreed to reimburse Schell for any damages, costs, or expenses of any nature he incurred as a result of operating Amendia's business. (*Id.* ¶ 16.) Amendia further agreed to procure, maintain, and present Schell a certificate of coverage for at least $5 million in product liability insurance when it began selling SPARTAN products. (*Id.*)

The parties entered into a second agreement in July 2010. (*Id.* ¶ 20; Dkt. 6 at 13.) It was much like the earlier agreement. It involved that development of a medical device known as the Polyetheretherketone ("PEEK") Oblique Lumbar Interbody Fusion Device ("OLIF"). (Dkt. 6 at 13.) Amendia agreed to pay Schell a royalty of 2% of its gross sales of that device. (Dkt. 1 ¶ 21.) Schell claims the OLIF device was one type of MIS PEEK device that was part of the 2009 agreement. (*Id.* ¶ 23.) The 2010 agreement contained a merger clause, saying that it supersedes and replaces all previous agreements "with respect to the subject matter hereof." (Dkt. 6 at 17.) Even so, Schell claims the 2010 agreement did not nullify the 2009 agreement, requiring Amendia to pay him a royalty

of 5.5% of all OLIF device sales — 3.5% for the 2009 agreement and 2% for the 2010 agreement. (Dkt. 1 ¶ 24.)

The parties entered into a third agreement in March 2011 for the development of something known as Savannah T pedicle screw system. (*Id.* ¶ 32; Dkt. 6 at 20.) Amendia agreed to pay Schell royalties of 2% of the net sales of the Savannah T system during the term of the agreement. (Dkt. 1 ¶ 26.) Georgia law governs each agreement. (Dkt. 6 at 9, 18, 22.)

Schell claims that he did everything to fulfill his side of the agreements. He claims he met with Amendia's employees, engineers, and representatives several times to consult on the SPARTAN, OLIF, and Savannah T products. (Dkt. 1 ¶ 40.) He claims they observed his surgeries. (*Id.*) He claims he traveled throughout the United States from 2009 to 2014 to meet with and teach other surgeons how to use Amendia's products. (*Id.* ¶ 41.) Schell also alleges that he travelled to conduct promotional and educational activities in 2013 and 2014 for the product, incurring $38,663.50 in expenses that Amendia has not reimbursed. (*Id.* ¶ 43.)

Schell sued Amendia in July 2017.  (Dkt. 1.)  Amendia moved to dismiss Counts One, Two, Five, and Six for failure to state a claim.  (Dkt. 15.)  Schell opposed that motion.  (Dkt. 19.)

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."    Under Rule 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

When considering a motion to dismiss, the court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff, the non-movant. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).  But the court need not accept as true any legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The court's "duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in

favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irwin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

A "district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005); *see also* FED. R. CIV. P. 12(d). But a court may consider exhibits attached to the complaint. *See* FED. R. CIV. P. 10(c). And the exhibits a plaintiff attaches to its complaint governs when they contradict the allegations of the complaint. *See Griffin Indus., Inc.*, 496 F.3d at 1206. A district court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents are central to the complaint and no party questions their authenticity. *See Day*, 400 F.3d at 1276. A document is central to a complaint when it is a "necessary part of [the plaintiff's] effort to make out a claim." *Id.*; *see also Bryant v. Citigroup Inc.*, 512 F. App'x 994, 995 (11th Cir. 2013) ("Although ordinarily nothing beyond the face of the complaint and the attached documents are considered in analyzing a motion to dismiss, [courts] make an exception where the plaintiff refers to a document in his complaint, it is central to his claim, the contents are not disputed, and the defendant attaches it to

his motion to dismiss.").  Under those circumstances, the district court may consider the documents without converting the motion to dismiss into a motion for summary judgment.  *See Day,* 400 F.3d at 1275–76.

## III.  Discussion

### A.    Breach of Contract Claims

In Count One, Schell alleges Amendia materially breached the 2009 agreement.  (Dkt. 1 ¶ 46–50.)  He claims they did this by failing to pay the necessary royalties for MIS PEEK devices other than the OLIF device and by failing to pay complete royalties for the OLIF device after the second quarter of 2010 (when the parties entered into the 2010 agreement).  He claims Amendia also breach the 2009 agreement by failing to fulfill its other obligations under the contract (like its obligation to obtain the required insurance and to reimburse Schell for certain expenses).  (*Id.*)  In Count Two, Schell also claims Amendia breached the 2010 agreement by failing to pay complete royalties on the OLIF device after July 2010.  He also claims Amendia breach the 2010 agreement by failing to fulfill its other obligations.

To establish a breach of contract claim under Georgia law, Schell must allege: "(1) breach and the (2) resultant damages (3) to the party

who has the right to complain about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014) (quoting *Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)). "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *UWork.com, Inc. v. Paragon Techs., Inc.*, 740 S.E.2d 887, 893 (Ga. Ct. App. 2013) (citations and punctuation omitted). "When a court construes contractual terms to determine if a breach has occurred, the cardinal rule of contract construction is to ascertain the intention of the parties." *Id*. (quoting *Bd. of Comm'rs of Crisp Cty. v. City Comm'rs of Cordele*, 727 S.E.2d 524, 527 (Ga. Ct. App. 2012)). If the language of a contract is plain and unambiguous, no construction is required and courts must give the contract an interpretation of ordinary significance. *See Calabro v. State Med. Educ. Bd.*, 640 S.E.2d 581, 583 (Ga. Ct. App. 2006). "[I]f the contract is ambiguous . . . courts must apply the rules of contract construction to resolve the ambiguity." *Old Republic Nat'l Ins. Co. v. Panella*, 734 S.E.2d 523, 526 (Ga. Ct. App. 2012) (quoting *Holmes v. Clear Channel Outdoor, Inc.*, 644 S.E.2d 311, 313 (Ga. Ct. App. 2007)).

### 1. Breach Arising from Failure to Pay Royalties on Non-OLIF Devices (Count One)

Amendia argues Count One should be dismissed because the OLIF device identified in the 2010 agreement is the same as "the MIS PEEK" device referred to in the 2009 agreement. It thus claims that the merger clause in the 2010 agreement precludes Schell's claims under the 2009 agreement for royalties on the OLIF device after July 1, 2010. (Dkt. 15-1 at 3–4.) Likewise, it claims that the OLIF device was the one and only MIS PEEK device covered by the 2009 agreement, preventing Schell from recovering for any non-OLIF devices.

The 2010 agreement states OLIF is a Polyetheretherketone (PEEK) Oblique Lumber Interbody Fusion Device, but it does not mention the MIS PEEK Interbody Device or any other PEEK devices. (Dkt. 6 at 13.) Amendia directs the Court to the notation "OLLIF" (sic) and line drawn to "*the* MIS PEEK Interbody Device" in provision 2.2 of the 2009 agreement in the original exhibit 1 to Schell's complaint to support its argument. (Dkt. 15-1 at 5 (quoting Dkt. 1 at 25).) Amendia claims this shows the OLIF device was the one and only MIS PEEK device covered by the 2009 agreement. It argues that Schell's attempt to recover

royalties on OLIF sales under both the 2009 and 2010 agreements supports this interpretation of the handwritten notation. (*Id.* at 4.)

Schell, however, alleges that the OLIF device addressed in the 2010 agreement is ***one kind*** of the broader category of MIS PEEK devices in the 2009 agreement. (Dkt. 1 ¶¶ 20, 23.) Thus, Schell explicitly alleges that the devices are not the same and neither the 2009 nor 2010 agreements directly contradict his assertion. He claims that he is owed royalties on other MIS PEEK devices besides the OLIF device. The Court must accept that allegation at this stage of the proceeding. The Court denies Amendia's motion to dismiss Count One so far as it alleges a breach of the 2009 agreement for the failure to pay royalties on non-OLIF devices.

### 2. Breach Arising from Failure to Pay 5.5% Aggregate Royalty Fee (Counts One and Two)

As explained above, Schell claims in Count One that Amendia breached the 2009 agreement by failing to keep paying 3.5% royalties on sales of OLIF devices under the 2009 agreement after executing the 2010 agreement. Likewise, he claims in Count Two that Amendia breached the 2010 agreement by failing to pay the full 5.5% royalty after July 2010. In response to both claims, Amendia says that the 2010 agreement

replaced the 2009 agreement for royalties on OLIF device sales. It claims it had to pay only a 2% royalty on OLIF sales after July 2010 and the merger clause in the 2010 agreement bars Schell's claim for the additional royalties under either the 2009 or 2010 agreements.

The merger clause states:

> This Agreement and the documents, instruments, and other agreements among the parties delivered pursuant hereto, constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings with respect to the subject matter hereof.

(Dkt. 6 at 17.) The 2010 agreement does not explicitly define its "subject matter," but the parties agree the 2010 agreement deals with the design and development of the OLIF device. (*Id.* at 13, 15.) Schell also alleges in his complaint that the OLIF device is the subject matter of the 2010 agreement. (Dkt. 1 ¶¶ 20–25 ("The OLIF device made the subject of the 2010 Agreement . . . .").) He does not claim it was the only MIS PEEK device. He claims it was one of them.

If Amendia is correct and the OLIF device is "the MIS PEEK" device covered by the 2009 agreement, the 2010 agreement should supersede the 2009 agreement for MIS PEEK/OLIF devices. (Dkt. 6 at 17.) *See also Atlanta Integrity Mortg., Inc. v. Ben Hill United Methodist Church*, 650

S.E.2d 359, 362 (Ga. Ct. App. 2007) ("Under the merger rule, an existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract." (quotation marks omitted)). And Schell has identified no language in the 2010 agreement that suggests the parties intended for the 2% royalty fee under the 2010 agreement to be cumulative with the 3.5% royalty fee under the 2009 agreement. Thus, under the 2010 agreement, at most Schell could recover royalty fees "equal to two (2%) percent of gross sales" of the OLIF after July 1, 2010, not the 5.5% cumulative royalties Schell alleges in his complaint. (Dkts. 1 ¶ 24; 6 at 15.)

Schell argues that the royalty fees on OLIF products made after July 2010 should be 5.5% because the 2010 agreement does not "modify, alter, or amend any terms, obligations, or rights set forth in or established by the 2009 Agreement." (Dkt. 19 at 5 (quoting Dkt. 1 ¶ 24).) But if the 2010 agreement covers the same device as the 2009 agreement (as Schell suggests) the merger clause in provision 7.1 of the 2010 agreement directly contradicts Schell's assertion. (Dkt. 6 at 17.) When, as here, there is a conflict between allegations in a pleading and exhibits

to the pleading, the exhibits control. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

Schell claims Amendia's argument based on the 2010 merger clause makes the 2010 agreement void for lack of consideration. (Dkt. 19 at 7.) Schell argues Amendia had to pay him a 3.5% royalty fee on OLIF sales under the 2009 agreement and that he would not have agreed to lower that rate to 2% without receiving something beyond what the 2009 agreement already provided. (*Id.* at 8.)

"'To constitute consideration, a performance or a return promise must be bargained for by the parties to a contract,' which means that 'it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.'" *Rowe v. Law Offices of Ben C. Brodhead, P.C.*, 735 S.E.2d 39, 43 (Ga. Ct. App. 2012) (quoting GA. CODE ANN. § 13-3-42(a)–(b)). "The bargained-for performance may be an act other than a promise, and it can include a forbearance or the creation,

modification, or destruction of a legal relation." *Id*. (citing GA. CODE ANN. § 13-3-42(c)). "An agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another." *Lamb v. Fulton-DeKalb Hosp. Auth*., 677 S.E.2d 328, 333 (Ga. Ct. App. 2009). But "[m]ere inadequacy of consideration alone will not void a contract." GA. CODE ANN. § 13-3-46. Rather, such inadequacy "is a strong circumstance to evidence fraud" that "will always enter as an element in estimating the damages." *Id*.

According to Provision 2.1 in the 2010 agreement, Amendia paid Schell ten dollars of consideration for signing the agreement. (*Id*.) Had the parties signed the 2010 agreement under seal, such nominal consideration alone would be sufficient as a matter of law to support the agreement. *See, e.g.*, *Tyson v. McPhail Props., Inc*., 478 S.E.2d 467, 470 (Ga. Ct. App. 1996) (recitation of nominal consideration of $10 in option agreement signed under seal was sufficient as matter of law to support agreement); *City of Lithia Springs v. Turley*, 526 S.E.2d 364, 369 (Ga. Ct. App. 1999) ("[N]ominal consideration recited in sealed instruments is sufficient as a matter of law."). But, unlike the 2009 and 2011

agreements, the parties did not sign the 2010 agreement under seal. (Dkt. 6 at 10–11, 18, 24.)

Amendia argues the 2010 agreement represents a new contract with a renegotiated royalty rate for the OLIF. (Dkt. 24 at 7.) It cites *Munson v. Strategis Asset Valuation and Management, Inc.*, 363 F. Supp. 2d 1377, 1382 (N.D. Ga. 2005), to support its argument. In that case, however, the court rejected the "failure of consideration" argument because the party seeking to enforce the new agreement showed additional consideration given for the new contract. *Id.* (in return for employee's agreement to new contract, employer agreed to prorate commissions, "something [it] was not legally required to do"). Amendia has identified no new consideration here for Schell's alleged agreement to reduce his royalty fee. Indeed, neither party has identified any consideration Schell received in exchange for reducing the 3.5% royalty fee under the 2009 agreement to 2.0% in the 2010 agreement.

Of course, this argument would go both ways. If Schell received no consideration for his agreement to reduce his royalties on the OLIF device, Amendia received no additional consideration for its agreement to pay additional royalties, since Schell was obligated under the 2009

agreement to provide the services outlined in the 2010 agreement. If the 2010 agreement involves the exact device covered by the 2009 agreement and there was no additional consideration, that agreement is a nullity and the 2009 agreement controls. Either Schell is entitled to the original 3.5% or the next 2% but the Court — at this time — can see no legal construction under which he is entitled to the benefit of the 2010 agreement for a device covered by the 2009 agreement without the effect of the merger clause.

The parties dispute whether the OLIF device under the 2010 agreement refers to "the MIS PEEK Interbody Device" in the 2009 agreement or is one of several types of MIS PEEK devices. Neither the complaint nor the exhibits answer this question. Perhaps the parties can resolve the issue at summary judgment. The Court thus declines to find the 2010 agreement void for lack of consideration or to dismiss Plaintiff's claim for breach of the agreement.

### 3. Breach from Alleged Failure to Provide Insurance Coverage

Amendia argues Schell failed to allege that its breach of provision 6.2 of the 2010 agreement caused him any damages. That provision required Amendia to procure and maintain product liability insurance,

including broad form contractual liability coverage, from the time it began selling the OLIF device though the start of the 2010 agreement. (Dkt. 6 at 17.)

In his complaint, Schell alleges that he suffered $751,994.00 in damages because of Amendia's breaches of the 2010 agreement. (Dkt. 1 ¶ 60.) Accepting this fact as true and drawing all reasonable inferences in Schell's favor, the Court finds Schell has alleged enough facts to state a claim to relief that is plausible on its face.

The Court denies Amendia's motion to dismiss Schell's claim based on Amendia's failure to obtain product liability insurance.

### 4.  Indemnification and Reimbursement

Amendia moves to dismiss Schell's claim seeking reimbursement and compensation under provision 6.1 of the 2010 agreement. Under that provision, Amendia agreed to compensate and reimburse Schell for any costs or expenses of any nature he directly or indirectly suffered or incurred that arose or resulted from Amendia's business operations. (Dkt. 6 at 17.)[2]

---

[2] Provision 6.1 states:

Schell alleged that in 2013 and 2014, he incurred expenses while travelling to promote and educate others about Amendia's products. (Dkt. 1 ¶ 43.) Schell alleges Amendia breached the 2010 agreement by refusing to compensate and reimburse him for those expenses. (Dkt. 1 ¶ 57.)

Amendia argues Schell's claim "completely misinterprets the meaning and objective of such [indemnification] provisions." (Dkt. 15-1 at 8.) It cites the definitions of a "hold harmless agreement" and "indemnify" in Black's Law Dictionary to argue that Schell is improperly attempting to use the indemnity clause in the 2010 agreement to enforce the contract. (*Id*. at 8–9.)

---

[Amendia] shall hold harmless and indemnify SCHELL from and against, and shall compensate, and reimburse SCHELL for, any losses, damages, injuries, declines in value, lost opportunities, liabilities, claims, demands, settlements, judgments, awards, fines, penalties, fees (including reasonable attorneys', accountants' and expert witness' fees), charges, costs or expenses of any nature (collectively, "Damages") which are directly or indirectly suffered or incurred by any [sic] SCHELL or to which SCHELL may otherwise become subject, regardless of whether or not such Damages relate to any third-party claim, and which arise from or as a result of, or are directly or indirectly connected with: . . . (iii) the operation of [Amendia's] business.

(Dkt. 6 at 8.)

In Georgia, "contracts must be construed to give effect to the parties' intentions, which must whenever possible be determined from a construction of the contract as a whole." *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. 2001). "Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning." *Id*.

Neither party argues that any part of provision 6.1 is ambiguous. The Court recognizes that indemnification and hold harmless agreements do not usually allow a party to recover ordinary business expenses. But the plain language in provision 6.1 shows that it is more than just an indemnification or hold harmless agreement. Amendia explicitly agreed to compensate and reimburse Schell for charges, costs, or expenses *of any nature* he directly or indirectly incurred in connection with Amendia's business operation. (Dkt. 6 at 4–5.) The costs Schell claims could fall within the broad reach of provision 6.1 if he can present evidence that he incurred them "directly or indirectly connected with the operation" of Amendia's business.

The Court thus denies Amendia's motion to dismiss Schell's claim seeking reimbursement and compensation under provision 6.1 of the 2010 agreement.

### 5. Delayed Payments

Schell alleged Amendia breached the 2010 agreement by withholding royalty payments for ninety days in the third and fourth quarters of 2012. (Dkt. 1 ¶ 58.) Amendia moves to dismiss this claim, arguing the late payments did not damage Schell. (Dkt. 15-1 at 9 (citing *Wells Fargo Bank, N.A. v. Latouche*, 798 S.E.2d 54, 58 (Ga. Ct. App. 2017)).)

In his complaint, Schell alleges that he suffered $751,994.00 in damages because of all of Amendia's breaches of the 2010 agreement. (Dkt. 1 ¶ 60.) He apparently claims some of this resulted from the delay in payments. Accepting this fact as true and drawing all reasonable inferences in Schell's favor, the Court finds Schell has alleged enough facts to state a claim to relief that is plausible on its face.

The Court denies Amendia's motion to dismiss Schell's claim based on Amendia's delayed royalty payments in 2012. Of course, to survive summary judgment, Schell will have to present evidence sufficient to

raise a material fact that he suffered damages as a result of the ninety-day delay in payments.

### 6. Failure to Pay Royalties for Sales of Savannah T Under 2011 Agreement

Schell alleges Amendia materially breached provision 6.1 of the 2010 agreement by refusing to pay royalties under the "2011 Savannah T Royalty Agreement" for quarters in 2016 and 2017. (Dkt. 1 ¶ 59.) Amendia moves to dismiss this claim because the parties did not intend for provision 6.1 of the 2010 agreement to apply to other contracts not yet in existence.

Indeed, the 2010 agreement addresses OLIF products, not the Savannah T. The only part of the 2010 agreement that contemplates future agreements is provision 3.1, which provides that "additional generations to the 'OLIF' . . . will become an extension of this Agreement" and all associated proprietary and intellectual property will belong to Amendia. (Dkt. 6 at 15.) And Schell does not allege that the Savannah T was another generation of the OLIF device.

Provision 6.1 is broad, broad enough to cover Schell's expenses he "suffered or incurred" in connection with Amendia's business. He did not suffer or incur royalties on sales of the Savannah T product in connection

with Amendia's business. He did not suffer or incur those royalties at all. He seeks to receive them. Schell's claim that Amendia breached the indemnity provision of the 2010 agreement by not paying royalties on the later agreement bends 6.1 far beyond its plain meaning. Accepting Schell's alleged facts as true and drawing all reasonable inferences in his favor, the Court dismisses his claim for breach of the 2010 agreement based on the alleged nonpayment of Savannah T product royalties.

## B. Declaratory Judgment, Royalty Obligations (Count Five)

Amendia moves to dismiss Schell's declaratory judgment claims, Counts Five and Six, for failure to state a claim. In Count Five, Schell requests that the Court declare the nature, scope, and terms of Amendia's future royalty obligations to him under the 2009, 2010, and 2011 agreements. Amendia asserts this declaratory judgment claim should be dismissed because it duplicates Schell's breach of contract claim and there is an adequate remedy at law.

The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as there is an actual controversy. 28 U.S.C.

§ 2201(a). "It is common in our Circuit for District Courts to dismiss requests for declaratory judgment when a plaintiff asserts a corresponding claim for breach of contract." *HM Peachtree Corners I, LLC v. Panolam Indus. Int'l, Inc.*, No. 1:17-CV-1000-WSD, 2017 WL 3700304, at *3 (N.D. Ga. Aug. 28, 2017) (collecting cases). Courts do so where there is an adequate remedy at law and a decision on the merits of the breach of contract claim would render the defendant's request for declaratory judgment moot or redundant. *See Eisenberg v. Standard Ins. Co.*, No. 09-80199-CIV, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009).

Schell's declaratory relief claim in Count Five stems from the same facts as his breach of contract claims. The essence of the claims are also the same: that Amendia breached the 2009, 2010, and 2011 agreements, in part, by failing to pay Schell royalty fees that were due under the contracts. (Dkt. 1 ¶¶ 46–47, 55, 59, 63, 69–70.) The Court thus finds Schell's claim for declaratory relief is duplicative of his breach of contract claims and grants Amendia's motion to dismiss Count Five.

## C. Declaratory Judgment, Patent Rights (Count Six)

Schell alleges that because Amendia materially breached provisions in the 2009, 2010, and 2011 agreements, he is entitled to

ownership and exclusive use of Amendia's intellectual property related to the SPARTAN Products, OLIF device, and Savannah T facet screw system under provision 5.2 in the 2009 and 2010 agreements. (Dkt. 1 ¶¶ 76–77.) Schell argues that because provision 5.2 states that all of the "Patent Rights" should be available to him for his use, "the Agreements unambiguously indicate the parties' intent to transfer to Schell the right to exclude all others from their use." (Dkt. 19 at 22–23.)

Amendia argues laches bars Schell's claim and that Schell misinterprets the meaning of the word "available" in provision 5.2.

Provision 5.2 in both the 2009 and 2010 agreements provides that "[u]pon material breach of this agreement, all of the Patent Rights, engineering material, and FDA information shall be available to SCHELL for its use." (Dkt. 6 at 7, 16.) Nothing in provision 5.2 says these materials should be available to Schell for his "exclusive use" or that he will own them. Use is not ownership. Other provisions in the contract directly contradict Schell's allegations. *See Clark v. AgGeorgia Farm Credit ACA*, 775 S.E.2d 557, 560 (Ga. Ct. App. 2015) ("[T]he whole contract should be looked to in arriving at the construction of any part.") Provision 3.1 in the 2009 and 2010 agreements states that Schell

"recognizes his interests to be limited to the royalty fee contained herein." (Dkt. 6 at 6, 15.)  Provisions 3.5 in the 2009 and 2010 agreements state that Amendia "retains all proprietary and other related interests including patents and other intellectual property in the first and other generations of the [products]." (*Id*. at 7, 15.)

The Court grants Amendia's motion to dismiss as to Schell's declaratory judgment claim in Count Six.

## IV.   Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant Amendia, Inc.'s Motion to Dismiss for Failure to State a Claim (Dkt. 15), **DENIES AS MOOT** Plaintiff Gerald R. Schell, M.D.'s Motion for Order Permitting Discovery and Requiring Defendant to File an Answer to Counts Three, Four, and Seven of the Complaint (Dkt. 29), and **DISMISSES** Counts Two (with respect to the claim for indemnity regarding the Savannah T products), Five, and Six of Plaintiff Schell's Complaint (Dkt. 1).

Defendant Amendia must answer Plaintiff Schell's Complaint on or before November 14, 2019.  (*See* Dkt. 26.)

**SO ORDERED** this 31st day of October, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE